Gabriel NICOLAS et ux., Appellants,

v.

James B. McINTYRE, Trustee, et al., Appellees.

No. 6131.

Court of Civil Appeals of Texas, El Paso.

Oct. 28, 1970.

Rehearing Denied Nov. 18, 1970.

Joseph J. Rey, Sr., El Paso, for appellants.

Mayfield, Broaddus & Perrenot, Francis C. Broaddus, Jr., Ellis O. Mayfield, Peticolas, Luscombe, Stephens & Windle, W. C. Peticolas, El Paso, for appellees.

OPINION

FRASER, Chief Justice.

The nature of the case as stated by the plaintiff-appellants is as follows: This suit was brought by the plaintiffs, Gabriel Nicolas and wife, Elena G. Nicolas, appellants, against defendants Ira Q. May-

---

hew, Mina Lou Mayhew Brady, Robert T. Schwarzbach, Trustee, James B. McIntyre, Trustee, and DeWitt and Rearick, Inc., to cancel trustee deed on the ground of constructive fraud. James B. McIntyre, Trustee, and DeWitt and Rearick, Inc. filed their motions for summary judgment, which were granted. The court having rendered judgment granting the motions for summary judgment, the appellants are prosecuting their appeal to this court.

It appears from the affidavit of James B. McIntyre that appellants executed a deed of trust on February 23, 1962, to Robert T. Schwarzbach, as trustee, covering Lots 25 and 26 in Block 1, Alamo Heights, a subdivision in the City of El Paso, El Paso County, Texas, to secure Ira Q. Mayhew and Mina Lou Mayhew Brady, beneficiaries, in the payment of a promissory note of even date in the principal sum of $10,500.00 payable in monthly installments of $115.00, the first installment being due on or before April 1, 1962 and a like installment due on the same day of each succeeding month thereafter until said note was paid in full. As time went on, in 1969 the appellants became delinquent in their payments, and the owners of this note and the beneficiaries of the deed of trust, acting through their attorney, a Mr. Carrithers of Houston, Texas, engaged the law firm of Mayfield, Broaddus and Perrenot concerning foreclosure by deed of trust sale on the subject property due to the said delinquencies. The note at that time was held for collection by the real estate note collection department of the State National Bank of El Paso, Texas. It appears that in his affidavit Mr. McIntyre, of the said law firm, stated that he contacted Nancy Ellen Byrum, of the real estate note collection department of the said Bank, and was told that no monthly payments had been received for September, October or November, 1969. Mr. McIntyre further stated that he picked up the note on November 13th and wrote a demand letter to Mr. Gabriel Nicolas and Mrs. Elena G. Nicolas at their ad-

dress; that on November 17th he received a telephone call from a Mr. Arievas, speaking for Mr. Nicolas, and was informed by Mr. Arievas that I (Mr. McIntyre) understood the note to be delinquent by three payments for a total delinquency of $345.-00; Mr. McIntyre stated that on November 19th he received a telephone call from the American Furniture Credit Union stating that it had approved a loan to Mr. Nicolas in the sum of $385.00. Mr. McIntyre stated that he accepted the money and credited the Nicolas account with $345.00, retaining $40.00 for attorneys' fees, and returned the note and deed of trust to the State National Bank of El Paso.

Mr. McIntyre further states in his affidavit that he was advised on December 9th, by the Mayhew attorney, Mr. Carrithers, that they were under the impression that the note was more seriously in default than was represented by Mr. McIntyre's collection of three payments on November 9th. Upon investigation he was advised by the State National Bank, speaking through Nancy E. Byrum, that a posting error had been made in the ledger of one year, and that at the time of the transaction regarding the $385.00 payment, Mr. and Mrs. Nicolas were in default of fifteen months, instead of three months. He then wrote to Mr. and Mrs. Nicolas informing them of the bank's posting error and the serious delinquency of the note, and demanded payment for all delinquencies and interest and attorneys' fees by Monday, December 15th, and informed them that unless this was done the entire indebtedness would mature, and notice of trustee's sale would be posted on that day for the purpose of foreclosing the deed of trust lien against the real estate. On December 12, 1969 he again picked up the note and deed of trust from the bank, and on December 15th, Gabriel Nicolas and his sister came to his office to discuss the payment of the delinquency and the pending foreclosure, at which time Mr. Nicolas stated that he did not have the deficiency balance and asked for more time. Mr.

McIntyre informed Mr. Nicolas that he would proceed to have the trustee in the deed of trust post notices of trustee's sale and conduct the sale on the first Tuesday of January, being January 6th. Mr. Schwarzbach posted the notices in three public locations. Mr. McIntyre then wrote the owners of the note and informed them of Mr. Nicolas' request for an extension of time and requested that he (Mr. McIntyre) be named as trustee to succeed Mr. Schwarzbach. He then wrote Mr. Nicolas that the foreclosure proceedings had begun and unless he could raise the sum of $1,573.24 on or before January 6, 1970, the deed of trust would be foreclosed. He also recommended to Mr. Nicolas that an attempt be made to refinance the property through some of the local savings and loan associations. He later received a letter from attorney Carrithers and documents establishing him as successor trustee to Robert T. Schwarzbach. Mr. McIntyre stated that in his letter Mr. Carrithers said that it was agreeable with the owners of the note that Mr. Nicolas be allowed a thirty-day extension beginning January 1st to either sell the house or refinance the loan. On January 5th he received a telephone call from Mr. Joseph J. Rey, Sr., attorney representing Mr. Nicolas, in which Mr. McIntyre assured Mr. Rey that there was not going to be a sale "tomorrow, January 6th", but that the owners had given his clients a thirty-day extension, from January 1st, in order that he might attempt to sell the house or refinance the loan. On January 9th, Mr. McIntyre stated that he received a letter from Mr. Rey with his check for $115.00 enclosed, requesting that said check be credited to the Nicolas account and again referring to the assurance to Mr. Rey that Mr. and Mrs. Nicolas had until the end of January either to refinance or to sell the house. On January 9th Mr. McIntyre says he replied to Mr. Rey's letter acknowledging receipt of the check for $115.00 which was credited to the oldest mortgage debt of Gabriel Nicolas, which was January, 1969. He also told Mr. Rey that if Nicolas could raise enough money to take care of all deficiencies and legal expenses and any delinquent taxes by the first Tuesday in February, 1970, it was conceivable that the owners of the note might agree to drop the foreclosure.

He further stated that he was never contacted by either Mr. Rey or his client, Mr. Gabriel Nicolas and Mrs. Elena G. Nicolas, during this thirty-day extension, which expired on January 31st. Nothing was said to him in writing in any way with regard to the payment of the twelve months' deficiency, refinancing of the loan, or sale of the property; so on February 3rd the property was accordingly sold to DeWitt and Rearick for the sum of $8,600.00.

None of the above statements is contradicted in any way by the deposition of Mr. Nicolas. He admitted that he knew he was in default and that he could not raise the money. We do not find a single material dispute in this record. Everything that Mr. McIntyre stated in his affidavit was either not denied or was flatly admitted by Mr. Nicolas' deposition.

The appellants' position tries to set up and allege some sort of constructive fraud, presumably because Mr. McIntyre accepted the check for $115.00. We do not see any fraud in this, as it would be only one month's payment, for the month of January, which was the extension month. In Hazle v. McDonald, 449 S.W.2d 343 (Tex. Civ.App., Dallas 1969), no writ history, an action for fraudulent misrepresentations, the court stated:

"Fraud is never presumed. It has been said that it is the duty of the court 'to presume a want of fraud rather than the existence of fraud in a transaction.' Hawkins v. Campbell, 226 S.W.2d 891, 895 (Tex.Civ.App., San Antonio 1950, writ ref'd n. r. e.)."

From the affidavits and controverting affidavits, it appears very clear that the only serious mistake was that made by the bank in stating that Mr. Nicolas was three months in default, when he was in fact fifteen months in default. After paying up his three months' default, it was discovered that the bank was in error and the note was actually fifteen months in default and, after the payment of $385.00, remained twelve months in default. As stated in Mr. McIntyre's affidavit (and not denied in Mr. Nicolas' deposition or any other document), the owners agreed that Mr. Nicolas would have thirty days beginning January 1st to either sell or refinance the house, and the possibility was held out that if he were able to pick up all deficiencies of any sort, they might abandon the foreclosure. During the time from January 9, 1970 until the foreclosure of February 3, 1970, Mr. McIntyre, nor the noteholders nor their attorney, received any word or payment or promise of some form from Mr. and Mrs. Nicolas.

We have examined the deposition and documents submitted by the appellants and do not find any clear contradiction or statement of fact contrary to the matters set out by the appellees. Such being the case, appellees are entitled to summary judgment. Kuper v. Schmidt, 161 Tex. 189, 338 S.W.2d 948 (Tex.Sup.Ct., 1960) ; West Coast Min., Inc. v. Security Nat. Bank of Lubbock, Texas, 442 S.W.2d 821 (Tex.Civ.App., Amarillo 1969, ref. n. r. e.) ; Hazle v. McDonald (supra). As stated before, there is no material fact dispute existing in this record. We do not see how there could be any constructive fraud, as Mr. and Mrs. Nicolas were twelve months in arrears after they had made their $385.00 payment and after they had made their $115.00 payment in January, 1970.

Finding no material dispute in fact, we hold that the court's decision was correct, and it is therefore affirmed.